UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| MR. TREVOR MANNY ANDERSON, ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| v. ) | No. 3:11-0806 |
| ) | Judge Sharp/Brown |
| COMMISSIONER, OF TDOC WARDEN, ) | |
| *et al.*, ) | |
| ) | |
| Defendants ) | |

**TO: THE HONORABLE KEVIN H. SHARP**

### REPORT AND RECOMMENDATION

Presently pending is the Plaintiff's motion for preliminary injunction (Docket Entry 13). The Defendants' have filed responses in opposition to the motion (Docket Entries 29, 30). For the reasons stated below the Magistrate Judge recommends that the preliminary injunction be DENIED.

The Plaintiff in this matter sues various individuals connected with the Tennessee Department of Corrections (TDOC) and Correctional Medical Services (CMS) and several of its employees. The verified complaint alleges that the Plaintiff developed abdominal pain in May 2010 and that he did not receive appropriate medical treatment for his pain.

Plaintiff states that he was seen by Defendant Dr. Sator, who prescribed a scrotal support and Motrin for the pain.

1

He stated that he filed grievances about the matter on September 1, 2010, again complaining that he was in extreme pain and not receiving medical care adequate to relieve the pain. He states that he was advised by Dr. Sator on September 21, 2010, that he had a fluid buildup in groin, which was the cause of the pain. He alleges that Dr. Sator stated that he was unable to relieve the buildup or cure the problem stopping short of making a full diagnosis of the Plaintiff's medical condition and that he scheduled the Plaintiff for an ultrasound. He states that his grievances were not granted inasmuch as the Grievance Committee found in favor of the supervisor's response and Defendant Warden Bell concurred in the committee's response.

Plaintiff further alleges that he appealed to the TDOC Commissioner and was again denied. He alleges that in November 2010 he was rushed to the Freewill Hospital Emergency room where it was found that a hole had developed in his stomach. Because of this emergency, surgery was performed and the Plaintiff was hospitalized for approximately three weeks. He was told by unknown doctors while hospitalized that the delay in his treatment caused him to be critically injured.

The verified complaint was signed on May 20, 2011, although it appears that it was not filed with the Court until some three months later on August 22, 2011. Attached to the

2

complaint is a memorandum of law and attached to the memorandum of law were some of the treatment records. The record (Docket Entry 2, p. 22 dated 10-1-10) states that the Plaintiff was evaluated by Dr. Sator on September 28, 2010, for testicular pain.

> The assessment was normal with both testicles and groin areas showing no masses. You had no pain or tenderness during the physical exam. Due to your complaints of discomfort when standing up the doctor ordered for you to obtain a scrotal support and in addition to that you were ordered Motrin. Your prior ultrasound came back normal. After reviewing your health record I see you are being treated accordingly. Your request to drain the fluid is not medically necessary, not for such very little fluid. If your signs and symptoms persist and/or worsen please sign up for sick call.

This document was signed by Desiree Andrews, HSA. Additionally, there are three affidavits filed. One from a fellow inmate dated December 21, 2010, that states he has personally seen the Plaintiff in pain and that he believes the Plaintiff has not been appropriately treated and that his grievances and attempts to sign up for sick call have been ignored (Docket Entry 3).

Docket Entry 4 is an affidavit from Trinise Anderson. He states that at the end of May 2010 she received a telephone call from the Plaintiff complaining of excruciating pain around his groin area. She states that over the following two months

3

she called River Bend Prison and requested that someone check on Plaintiff because of his complaints. She states that she continued to receive complaints from Plaintiff about his pain and she continued to notify River Bend Prison for several weeks about it. She states that for approximately two months different family members and friends also called the prison, but that they received no word back from River Bend Prison until they later learned through a family friend that the Plaintiff had become very ill and had been rushed to General Hospital, where he underwent surgery.

Docket Entry 5 is an affidavit from Frances Toran dated June 11, 2011, in which he states that in May 20, 2010, the Plaintiff informed him that he was not feeling well and that his stomach was hurting. Mr. Toran informed the medical staff at the prison of Plaintiff's condition. During his next conversation with the Plaintiff he was advised by the Plaintiff that the Plaintiff's scrotum had swollen and he could hardly walk. Mr. Toran said he made several calls to the jail, but that the Plaintiff was not seen by anyone and that he actually went to the jail and talked to someone at the front desk about him being sick and was told there was no record of Plaintiff making a sick call. He states that he went downtown and talked to a Dr. Donna White and was subsequently contacted by a nurse

4

who told him that the Plaintiff needed to go through proper procedures of filing a sick call and to not call his family and tell them to call the prison. He states that he advised the nurse that the Plaintiff had made several sick call requests, and that the medication that he was given did not help. Mr. Toran states that he remained in contact with the Plaintiff from May to November, and the Plaintiff continued to tell him how sick he was. He states that he was told that in November the Plaintiff became ill and had to be admitted to the hospital where he apparently stayed for three weeks.

The complaint itself does not appear to allege any facts past Plaintiff's surgery in November 2010. Subsequently, the Plaintiff filed a motion for preliminary injunction (Docket Entry 13). In the motion for preliminary injunction and its supporting memorandum (Docket Entry 14) the Plaintiff seeks an injunction to require the Defendants to provide the Plaintiff with medical care in response to a large hernia that developed in the Plaintiff's abdomen after the November surgery.

Apparently, following the surgery in November 2010, the Plaintiff did develop a hernia, which he contends that the Defendants have not properly treated. He now requests an injunction requiring them to perform an ultrasound x-ray and a

5

proper diagnosis to have the hernia removed before it becomes too big to remove or treat.

He attaches to the motion (Docket Entry 13-1) a response to inmate information request dated June 8, 2011, from Dr. Sator in which that Dr. Sator states that his request for repair of his incisional (abdominal) hernia was refused for the following reasons: (1) that the Plaintiff almost died following surgery for the perforated bleeding ulcer in November 2010; (2) that he was not able to breathe by himself for several days and had to have medical assistance with his breathing; (3) that he developed a bad case of MRSA pneumonia; and (4) that he gained so much weight that even if the hernia is repaired, the likelihood of successful closure is in doubt and that he could develop a larger hernia in the area. The doctor further advised that he would be visiting his unit the next month and would be willing to discuss the matter further.

In his memorandum in support of his motion for preliminary injunction (Docket Entry 14) the Plaintiff does set out his view of the standard for granting a preliminary injunction. Without citation to authority he states that "The threshold for showing a reasonable likelihood of success is low, Plaintiff need only demonstrate 'a better than negligible chance of succeeding'."

6

The Plaintiff does not provide any medical information past Dr. Sator's memo of June 8, 2011.

The Magistrate Judge directed the Defendants to respond to this motion for preliminary injunction (Docket Entry 15) and they have done so (Docket Entries 29, 30).

The Magistrate Judge would note that he believes they correctly set out the test for issuing a preliminary injunction, the first part of which is that the Plaintiff must show a strong or substantial likelihood of success on the merits (Docket Entry 29, pp. 2,3, ft. 8). Defendants attached to their response the affidavit of Dr. Sator (Docket Entry 29-1, 11-21-11). Dr. Sator's affidavit reflects that he has personal knowledge of the facts in the affidavit and is competent to testify about the facts and opinions expressed therein. He states that he is a qualified medical doctor and has completed surgical residencies, among other qualifications and has been a licensed Tennessee practitioner since 1973. He states that he is familiar with the standard of care in the Nashville area and has been providing medical treatment to Plaintiff during his imprisonment. He states that Plaintiff underwent surgery approximately a year ago and almost died from post-surgical complications.

Dr. Sator confirms that following the surgery the Plaintiff was unable to breathe and had to rely on a ventilator

and also developed MRSA pneumonia. He states that the Plaintiff is obese and his obesity and post-operative complications caused him to develop a hernia at the site of the incision from the surgery because of the Plaintiff's size. Dr. Sator states that he is doubtful that a surgeon could successfully close the incision and because of his size there is a significant chance he would develop another large hernia. He states that in his medical opinion, the Plaintiff's obesity and post-surgical complications do not make him a good candidate for new surgery. He states that he has prescribed a binder for him to wear and advised him to lose weight. It is his medical opinion that with the proper use of a binder that the hernia can be managed, and until he loses weight the risk of new surgery is simply too great. In his medical opinion there is a real possibility that if the Plaintiff undergoes the surgery that he requests, he will not survive the procedure.

## LEGAL DISCUSSION

The Magistrate Judge agrees that the correct standard to determine whether a preliminary injunction should be granted is set out by the Defendants. Docket Entry 30, page 2, correctly states that the factors to be considered when determining whether to grant or deny preliminary injunction are as follows: (1) whether the Plaintiff has shown a strong or

8

substantial likelihood or probability of success on the merits; (2) whether Plaintiff has shown irreparable injury; (3) whether the issuance of a preliminary injunction would cause substantial harm to others; (4) whether the public interest would be served by preliminary injunction. *Parker v. U.S. Department of Agriculture*, 879 F.2d 1362, 1367 (6th Cir. 1989); *Frisch's Restaurant, Inc. v. Shoney's, Inc.* 759 F.2d 1261, 1263 (6th Cir. 1985).

The Magistrate Judge does not believe that the Plaintiff has shown a substantial likelihood of success on the merits. His case may well be subject to dismissal for failing to show personal involvement in the alleged unconstitutional activities of a number of the Defendants. Even negligent treatment claims do not as a rule make out a constitutional violation absent some verifying medical evidence about the harm of the delay. *Napier v. Madison County*, 238 F.3d 739, 742 (6th Cir. 2001). In the Magistrate Judge's view the more critical issue is whether there is a strong likelihood that the Plaintiff can show that he is being denied adequate medical treatment now.

In a review of the verified complaint, affidavits, and documents the Magistrate Judge does not believe the Plaintiff has met this standard, and that he has not met the standard of showing irreparable harm. The Defendants have provided a

9

current affidavit as to why surgery is not recommended or advisable at the present time and what treatment the Plaintiff is receiving.

While the Plaintiff expresses a personal opinion that he needs additional treatment, there is simply nothing else to show that Dr. Sator's diagnoses and recommendations are clearly erroneous. In fact, in Dr. Sator's medical opinion, surgery at this point could endanger the Plaintiff's life and that the Plaintiff is not a surgical candidate for repair of the hernia until he loses weight.

After carefully reviewing the pleadings in this matter, the Magistrate Judge believes that on the two most critical elements, likelihood of success and irreparable harm, the Plaintiff has simply failed to make his case. He has not made a strong showing that he will be able to succeed on the merits and he has failed to show that the failure to issue an injunction will cause him irreparable harm. It appears that he is receiving treatment from the institution and there is no showing that the treatment is insufficient, other than the Plaintiff's unsupported opinion.

The Magistrate Judge's Report and Recommendation is limited to the issue of a preliminary injunction. The Magistrate Judge expresses no opinion as to the final outcome of

10

the litigation on its merits pending further discovery and proceedings.

## RECOMMENDATIONS

For the reasons stated above, the Magistrate Judge recommends the motion for a preliminary injunction (Docket Entry 13) be **DENIED.**

Under Rule 72(b) of the Federal Rules of Civil Procedure, any party has **14 days** from receipt of this Report and Recommendation in which to file any written objections to this Recommendation with the District Court. Any party opposing said objections shall have **14 days** from receipt of any objections filed in this Report in which to file any responses to said objections. Failure to file specific objections within **14 days** of receipt of this Report and Recommendation can constitute a waiver of further appeal of this Recommendation. *Thomas v. Arn*, 474 U.S. 140 106 S. Ct. 466, 88 L.Ed.2d 435 (1985), *Reh'g denied*, 474 U.S. 1111 (1986).

ENTERED this 30th day of November, 2011.

/s/ Joe B. Brown_____
JOE B. BROWN
United States Magistrate Judge